¶ 1.
Skoglund, J.
Applicants, Richard J. Bove, Sr. and Rick Bove, applied to the City of Burlington Development Review *454 Board (DRB) to construct a development on their two adjacent lots. A zoning-district-boundary line runs through the middle of the proposed development, dividing the two parcels. The City’s zoning ordinance requires a fifteen-foot setback intended to be a buffer between the two districts — one downtown and the other residential. The DRB denied the application, and applicants appealed to the Environmental Division. The Environmental Division concluded that, although the merger of the two adjacent lots eliminated the property line dividing the two parcels, the merger did not eliminate the fifteen-foot buffer required by the zoning ordinance. Thus, any new structure in the downtown district parcel could not encroach on the setback bordering the residential district parcel. The decision of the Environmental Division comes to us on interlocutory appeal. We affirm.
¶ 2. The following facts are undisputed. Applicants own two lots on George Street, one located directly north of the other. The southern lot is located entirely in the Downtown Transition Zoning District (DT district); the northern lot is located completely in the Residential High Density Zoning District (RH district). The property line separating the two lots is thus also the boundary line between the DT and RH districts. Applicants propose to merge these two lots, thereby eliminating the existing property line, remove several existing buildings located on the two lots, and construct a single development consisting of twenty-three residential units and one commercial unit. The development would face eastward on George Street, its width running north-south across both lots, bisected by the east-west DT-RH boundary line. The northernmost edge of the building as proposed would be less than fifteen feet from the residential lot immediately to the north of applicants’ two lots.
¶ 3. Following the DRB’s denial of their application, applicants appealed to the Environmental Division. They moved for partial summary judgment, asking that court to decide the following question: If the two parcels of land owned by applicants are merged into a single lot, thereby eliminating the property line separating the former parcels, does the Burlington Comprehensive Development Ordinance require that improvements built thereon comply with the setback requirements from a zoning district line? The zoning-district-line setback at issue here is City of Burlington Comprehensive Development Ordinance § 4.4.1(d)(6) (2012) [hereinafter CDO]. That provision states that, in the DT district, *455 “[sjtructures shall be setback a minimum of 15-feet from any property line that abuts a residential zoning district.”[1] CDO § 4.4.1(d)(6).
¶ 4. Before the Environmental Division, applicants argued that upon merger of the two parcels, the fifteen-foot setback would not be required between the northern edge of the new structure and the northern property line. Applicants reasoned that no provision of the CDO required a zoning-boundary-line setback to exist in the absence of a property line between a lot located in the DT district and a lot located in an adjacent residential district. Therefore, they posited, they needed to comply only with the sideyard setback based on lot width in the RH District, which would result in a 5.14-foot setback.[2]
¶ 5. The City argued that the setback requirement of CDO § 4.4.1(d)(6) applied regardless of whether the DT-RH boundary line was also a property line. The City claimed that, in situations similar to this one, it had required the developer to formally request that the zoning-district line be redrawn to reflect the change in the property line.[3] Absent such an amendment, the City contended, a developer must comply with the fifteen-foot setback from the district boundary line, even if that setback would run through the middle of the merged parcel.
¶ 6. The Environmental Division interpreted CDO § 4.4.1(d)(6) differently than either party. It held that “the proposed structure does not have to be setback from the existing boundary line *456 between the DT and the RH zoning districts if the property line is removed through merger of the parcels.” It concluded, however, that although the merger of the two lots eliminated the current property line dividing the two parcels, the merger did not eliminate the setback, because the intent of the drafters of the zoning ordinance was to provide a transitional buffer between downtown zoning districts and adjacent residential districts. Thus, “any new structures in the downtown districts must be at least 15 feet from the shared property line with a parcel in a residential district.”
¶ 7. Applicants sought leave for an interlocutory appeal, and the Environmental Division ultimately certified the following question to this Court for review:
Whether the Environmental Court erred by ruling as a matter of law that a to-be-built structure on a new parcel resulting from merger of a parcel in the DT zoning district with a parcel in the RH district must comply with the [DT-RH] zoning district setback along the new parcel’s northern property line (located in the RH district), unless otherwise exempted.
¶ 8. This Court defers to the Environmental Division’s “interpretation of a zoning ordinance unless it is clearly erroneous, arbitrary, or capricious.” In re Wesco, Inc., 2006 VT 52, ¶ 7, 180 Vt. 520, 904 A.2d 1145 (mem.) (quotation omitted); In re Weeks, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). We construe zoning ordinances strictly in favor of landowners, In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578, 15 A.3d 590 (mem.), but our “principal objective” in interpreting statutory or ordinance language is to implement the intent of its drafters. Baker v. State, 170 Vt. 194, 198, 744 A.2d 864, 868 (1999). In doing so, we adhere to familiar principles of statutory interpretation. Weeks, 167 Vt. at 554, 712 A.2d at 909. We thus turn first to the plain language of the bylaw at issue. Id. But we recognize that “[zoning] regulations cannot be considered to be entirely exhaustive, given the breadth of novel land-development possibilities a municipal body may face.” Laberge Moto-Cross, 2011 VT 1, ¶ 14. Thus, if applying the plain language is impossible, would undermine the purpose of the statute, or would produce absurd results, then we examine “the broad subject matter of the statute, its effects and consequences, and the purpose and spirit of the law to determine legislative intent.” Town of Killington v. State, 172 Vt. 182, 189, 776 A.2d 395, *457 401 (2001); see also In re Margaret Susan P., 169 Vt. 252, 262, 733 A.2d 38, 46 (1999).
¶ 9. As the Environmental Division recognized, the City’s interpretation of CDO § 4.4.1(d)(6) ignores the plain language of the provision and common sense. The provision dictates the distance a structure must stand “from any property line.” Moreover, the CDO defines “setback” as “[t]he open, unobstructed area required to be provided between the furthermost projection of a building and the adjacent property liner CDO Art. 13: Definitions, at 13-39 (emphasis added). The setback requirement of § 4.4.1 (d)(6) therefore does not apply absent a property line. Indeed, it would be strange to apply a setback in the middle of a property, as the City would do here.
¶ 10. We agree with the City and the Environmental Division, however, that applicants’ interpretation of the setback provision — to allow them to unilaterally eliminate the buffer between the City’s residential zoning districts and the downtown zoning districts through the merger of two parcels — would undermine the intent of the drafters of the CDO. The CDO describes the purpose of the DT district as “providing] a balance and continuity in the character and scale of development . . . between the Downtown and the nearby residential district,” and functioning as a “gateway! 1” or “transition” between those districts. CDO § 4.4.1(a)(2). Structures in the DT district require minimal or zero setback and may cover 100% of the lot, icl Table 4.4.1-1, but structures in the RH district require setbacks in the range of five to seventy-five feet and may cover only up to 80% of the lot. Id. Table 4.4.5-3. Therefore, the purpose of the fifteen-foot “Residential District Setback” in § 4.4.1(d)(6) logically must be to provide a buffer between the denser downtown development and the less-dense residential communities. The Environmental Division’s interpretation of this district-boundary setback — that it should apply at the new northern border of applicants’ merged parcel, rather than along the former property line that divided the merged parcels — provides the buffer intended by the CDO drafters.
¶ 11. The Environmental Division’s interpretation here is reinforced by our decision in In re All Metals Recycling, Inc., wherein we confronted a similar multi-parcel setback issue. 2014 VT 101, ¶ 13, 197 Vt. 481, 107 A.3d 895. In that case, a business *458 that leased multiple adjacent parcels applied to the local development board for a discretionary permit to continue operating a previously unpermitted scrap metal plant, using space on all of the adjacent parcels. Neighbors challenging the permit application contended, among other things, that the business’s proposal violated setback and buffer requirements of the zoning ordinance.
¶ 12. The bylaws of the applicable zoning district required that each property have setbacks, which could include landscaped buffers, on all sides. The bylaws stated that setbacks and buffers are “ordinarily measured” from “the property . . . line.” Id. ¶ 23. While the neighbors argued that the business was required to have setbacks around each adjacent parcel in the set of parcels that contained the business’s operation, we disagreed. We implicitly acknowledged that the language “ordinarily measured” meant that setbacks generally would be measured from deeded property lines, but we interpreted the wording as “leav[ing] room for situations just like the present one, in which a business leases multiple parcels and uses space on each for its operations.” Id. ¶ 24. We considered the stated purpose of the ordinance’s setback/ buffer provisions, which included “ ‘ensuring] land use compatibility by requiring effective landscaped buffers between potentially incompatible uses,’ ” id. (alteration in original), and we ultimately interpreted “property line” to mean “the outer boundary of a property dedicated to a single use or under common legal control,” rather than property lines reflected on fee simple deeds. Id.
¶ 13. The Environmental Division’s decision in this case similarly rejects an interpretation that would apply a setback to an illogical location in favor of an interpretation that respects both the plain language and stated purpose of the setback provision. Just as the setback buffers in All Metals Recycling were “ordinarily” measured from deeded property lines, the City points out that the boundary lines of the DT district “generally” follow property lines. But we know from other CDO provisions that lots split by a zoning district boundary exist and are accommodated in various ways. See, e.g., CDO §§ 5.2.3(a)(1), 5.2.7(a)(1). Moreover, if district lines always followed property lines, the reference in the setback provision to property lines would be superfluous. The provision would simply state that structures must be setback “from any residential zoning district line,” rather than “from any property line that abuts a residential zoning district.” See CDO *459 § 4.4.1(d)(6). We assume that the drafters intended each word of the setback provision to have meaning; we avoid construing language of an ordinance as mere surplusage. See In re Lunde, 166 Vt. 167, 171, 688 A.2d 1312, 1315 (1997). Thus, while this case requires application of the setback provision in an unusual situation, the drafters’ language “leaves room for situations just like the present one, in which [developers own] multiple parcels and use[ ] space on each for [their] operations.” All Metals Recycling, 2014 VT 101, ¶ 24.
¶ 14. The drafters’ intent is subject to yet further debate. Both parties claim that changes made or not made during the 2008 redrafting of the CDO support their respective interpretation of the DT-RH setback provision. Applicants and the City both note that the drafters amended provisions of the CDO regarding split lots with respect to calculating density and lot coverage, but not setback requirements. Applicants imply that the drafters’ failure to address district-boundary setbacks specifically with respect to split lots indicates their intent that the setback requirements not apply in split lots. The City argues, on the other hand, that this omission means the drafters intended the setback provisions to apply to split lots, even where the zoning district boundary line bisects a parcel.
¶ 15. The City also points to the deletion of a particular provision as further proof that setback provisions are intended to apply to split lots. During the 2008 amendments, the drafters removed a provision that listed several rules for interpreting district boundaries where “uncertainty exists as to the boundaries of any district.” Two of those former rules applied to split lots and dictated that, with a couple of exceptions, that the split-lot owner should have the benefit of the more-permissive district’s restrictions. The City suggests that, by removing this provision while also adding other rules specifically for split lots, the drafters clarified that split lots are granted no special allowances, except for lot coverage and density, so zoning district boundary setbacks must apply at boundary lines regardless of whether they follow property lines.
¶ 16. The arguments of both parties fail because they rely on what they seek to prove. Applicants’ premise assumes that the ordinance as written completely excludes split lots from the district-boundary setback, while the City’s argument assumes that the ordinance’s current language strictly applies the setback at *460 the zoning-district-boundary line and that only a specific exception could change its location. The fact is the CDO drafters have never specifically addressed the particular legal conundrum presented here. Nor would we necessarily expect them to. See All Metals Recycling, 2014 VT 101, ¶ 13 (“ ‘We have recognized that zoning regulations cannot be considered to be entirely exhaustive, given the breadth of novel land-development possibilities a municipal body may face.’” (quoting Laberge Moto-Cross, 2011 VT 1, ¶ 14)). The drafters’ failure to address this particular situation does not indicate their position on it; instead, we are left with other tools of statutory interpretation to discern their intent from the language of the ordinance currently in effect. We have applied those tools and find no clear error in the Environmental Division’s interpretation of the ordinance.
¶ 17. Finally, the City expresses concern about expansion of our holding. It argues that affirming the Environmental Division’s decision would allow developers to buy up a row of lots — one in the DT district and the rest extending into the RH district — and thereby unilaterally shift the DT-RH setback buffer far past its intended location. Contrary to the City’s concern, our decision does not necessitate that the DT-RH setback in such a case be shifted to the edge of the new parcel farthest from the original DT-RH line. While we hold that the Environmental Division’s interpretation of the zoning provision in this case was a correct understanding of the law and effectuated the legislative intent, our opinion does not purport to predict the outcome of all future cases addressing the scope of the same provision. For example, if a hypothetical application of this setback were to create a seemingly absurd result, we would be tasked with applying the same statutory analysis we have utilized here to determine whether the legislative intent of the statute had been honored or ignored. See, supra, ¶ 8. In this case of a two-lot merger, it was not clearly erroneous to interpret the district-boundary setback to apply at the property’s border with the next RH-district property in light of the plain language and purpose of the setback provision.

Affirmed.

 The provision also refers to a list of exceptions that apply to “yard setback requirements” generally, but none is relevant here. CDO § 4.4.1(d)(6) (citing id. § 5.2.5(b)).

 The sideyard setback generally applicable to RH properties is 10% of the lot width but no less than five feet. CDO Table 4.4.5-3. Assuming arguendo that the DT portion of applicants’ lot would be subject to DT-specific restrictions and the RH portion would be subject to RH-specific restrictions, the 51.4-foot-wide RH portion of applicants’ lot would need a 5.14-foot setback from its northern edge.

 In its summary-judgment memorandum below, the City listed several instances in which its “staff’ interacted with developers who were seeking to build on or at district boundaries; the end result in each instance was that the developer requested and was granted an adjustment to the district line. While applicants in this case have not requested that the district line be redrawn, the City cites no requirement in the CDO that applicants make such a request. In any event, the City has not raised those interactions in the form of an argument on appeal. We will not consider them. See State v. Eldert, 2015 VT 87, ¶ 21 n.6, 199 Vt. 520, 125 A.3d 139 (“We will not consider arguments not adequately raised and briefed.”).