STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 15-2-15 Vtec |

| | |
|---|---|
| The Snyder Taft Corners LLC JO | DECISION ON MOTION |

This matter is an appeal from the Natural Resource Board's determination that The Snyder Taft Corner, LLC was not entitled to a refund for a portion of the fee it paid in connection with an Act 250 permit amendment it submitted to the District #4 Environmental Commission because the issue was moot. Snyder Taft Corner, LLC (Applicant) raises one question on appeal: "Was it wrong to require Snyder to pay an application fee in excess of the statutory cap set by 10 V.S.A. § 6083a(a)(6)."

Pending before the Court are the parties' cross-motions for summary judgment. Applicant argues that the statutory cap on application fees in 10 V.S.A. § 6083a(a)(6) applies to the sum of all fees paid in a master plan application and successive amendment applications. Because the fee for its most recent amendment application would make Applicant's total fees paid exceed the statutory cap, Applicant asserts that it should not have been required to pay the excess, and that it is entitled to a judgment in the amount of the excess it eventually paid (under protest). The Natural Resources Board (Board) argues that this appeal is "moot" because Applicant did eventually pay the excess and the sole remedy for obtaining an application fee refund is to first request a refund from the District Commission, and Applicant failed to do so. In the alternative, the Board argues that the statutory cap applies to each individual permit amendment, not to the sum of all fees paid for a given permit series.

**Factual Background**

The parties in this case have submitted a stipulated statement of undisputed facts. The record also includes exhibits filed by Applicant, which are publicly available documents from its various permit applications in the master plan permit series at issue. As the Board has not

1

challenged the exhibits, we also rely on the exhibits to provide undisputed facts. See V.R.C.P. 56(c)(3) and 56(e)(2). For the sole purpose of deciding the pending motions, the Court recites the following facts, which we understand to be undisputed unless otherwise noted.

1.      The Snyder Taft Corners, LLC is the developer of a mixed-use planned united development project in Williston, Vermont known as Finney Crossing (the Project).

2.      The Project consists of a mix of office, service, and retail uses and a variety of housing types.

3.      The Project is subject to Land Permit series 4C0887.

4.      The Project is subject to the Town of Williston's residential growth management process and must be constructed in phases over a period of at least nine years.

5.      Applicant applied for a land use permit amendment for the Project on March 29, 2007.

6.      The District #4 Environmental Commission (District Commission) issued Land Use Permit Amendment 4C0887-1R on December 16, 2009, approving the master plan for the Project's 356 residential units and 186,000 square feet of commercial space, and authorizing Applicant to begin construction of phase one of the Project.

7.      The District Commission issued positive findings under all Act 250 criteria for the first phase of residential construction as well as positive findings on a majority of criteria for the entire Project.

8.      The District Commission directed that "[c]onstruction of the remaining residential units and any commercial buildings are [sic] not authorized until a permit amendment is issued for that purpose." The District Commission further directed that subsequent permit amendments should specifically address those criteria for which positive findings had not yet been made.

9.      When the Applicant applied for its permit in 2007, it paid an application fee based on the cost of construction for the entire Project—i.e., for 356 residential units and 186,000 square feet of commercial space. At that time, the statutory cap for application fees under 10 V.S.A. § 6083a(a)(6) was $135,000.00. 1998, No. 155, § 26. Because a fee based on the actual cost of construction for the entire Project would exceed the cap, Applicant paid $135,000.00.

10.     Over the next seven years, through the course of various permit amendments, the District Commission approved construction of a total of 361 units.

11.    In 2010, the Legislature increased the statutory cap to $150,000. See 2010 No. 134, § 33.

12.    On September 17, 2014, Applicant submitted Land Use Permit Application 4C0887-1R-H (H Amendment Application) for the construction of twenty additional residential units. If approved, this would bring the total number of permitted units to 381.

13.    Applicant noted that an application fee based on the construction costs for the twenty additional units would be $19,170.00 under 10 V.S.A. § 6083a(a).

14.    Applicant provided payment of $11,962.50, which represented its calculation of the difference between the sum of all fees paid to that point and the then-existing statutory cap of $150,000 under Section 6083a(a)(6) (2010).

15.    Applicant claimed that the $11,962.50 payment amounted to the maximum allowed fee for the Project according to 10 V.S.A. § 6083a(a)(6).

16.    On September 18, 2014, the District Coordinator issued a jurisdictional opinion (JO 4-240) to Applicant that determined that Applicant's application was incomplete because it did not include the required fee of $19,170.00 (the full fee based on construction costs for the H Amendment Application).

17.    As of September 26, 2014, Applicant had paid the remaining application fee amount for a total of $19,170.00 so that its application could go forward.   Applicant noted in correspondence to the District Coordinator that it was paying the fee "under protest."

18.    On September 26, 2014, the H Amendment Application was deemed complete.

19.    On October 1, 2014, the District Commission published a notice of minor application for the H Amendment Application.  The District Commission issued the permit on December 16, 2014 without a hearing, pursuant to the minor amendment procedures in Act 250 Rule 51.

20.    On October 20, 2014, Applicant filed a notice of appeal of JO 4-240 with the Environmental Division of the Superior Court.  The District Coordinator's JO 4-240 erroneously advised Applicant that an appeal of the JO was to be filed with the Environmental Division when the correct challenge was by a request for reconsideration to the Board.  Pursuant to a stipulation between the parties, the Court dismissed the appeal without prejudice because it was filed in the incorrect forum.

21. Applicant filed a request for reconsideration of JO 4-240 with the Board on November 11, 2014. Applicant argued for a refund in the amount of $8,220.00, claiming that the balance was an overpayment.

22. On November 25, 2014, the Board distributed a Notice of Reconsideration, and during the fifteen-day notice period, the Board received no request for a hearing or any replies.

23. Applicant did not submit a request for a refund of the fee paid with the District Commission.

24. In its reconsideration decision, the Board found that the incompleteness issue considered under JO 4-240 was moot because Applicant had not submitted a refund request to the District Commission.

## Discussion

The pending cross motions for summary judgment raise two issues. The first is whether Applicant's appeal is moot because Applicant failed to follow proper procedure in requesting a refund. The second is whether Applicant's application fee for the minor amendment to its already-approved master plan should be subject to the statutory cap, 10 V.S.A. § 6083a(a)(6), that was applied to the master plan, or instead should be considered an distinct application subject to a new cap.

### I. Summary Judgment Standard

Pursuant to Rule 56 of the Vermont Rules of Civil Procedure, the Court will grant summary judgment to a moving party if that party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. The Court also accepts as true all factual allegations made in opposition to a motion for summary judgment, so long as they are supported by "specific citations to particular parts of materials in the record." V.R.C.P. 56(c)(1)(A). If the responding party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may "consider

4

the fact undisputed for purposes of the motion." V.R.C.P. 56(e)(2). The Court "need consider only the materials cited in the required statements of fact, but it may consider other materials in the record." V.R.C.P. 56(c)(3).

## II.      Mootness

The Board argues that this appeal is moot because Applicant already paid the disputed application fee, and its only procedural avenue for requesting a refund was to submit a written request for the refund to the District Commission pursuant to 10 V.S.A. § 6083a(e). Because the District Commission never had an opportunity to issue a decision on the request, the Board argues, it was without authority to consider Applicant's refund request.

We conclude that this appeal is not moot. 10 V.S.A. § 6083a(e) provides, "A written request for an application fee refund shall be submitted to the District Commission to which the fee was paid within 90 days of the withdrawal of the application." By its terms, the provision applies to "refunds" for applications that have been *withdrawn.* All subsections of Section 6083a(e) must be read with this limitation, and thus only apply to refunds for withdrawn applications. The application here has not been withdrawn, and it is not the kind of scenario to which Section 6083a(e) applies. Therefore, Applicant's appeal is not moot.

## III.     Applicability of Statutory Cap

Applicant argues that it was overcharged for its H Amendment Application because the fee charged, in combination with the application fees it previously paid for the Project, exceed the statutory cap provided by 6083a(a)(6). The statutory cap for a permit application fee in place at the time the H Amendment Application was filed provides, "In no event shall a permit application fee exceed $150,000." 10 V.S.A. § 6083a(a)(6) (2010). Applicant argues that it is entitled to a refund of $8,220.00 because the cap applies to the sum of all fees paid for permits and permit amendments that relate to a single project. In response, the Board argues that each permit amendment application is a separate and distinct "permit application." Therefore, the Board reasons, Applicant's H Amendment Application was a permit application separate from the previously approved permits and thus is independently subject to the $150,000.00 cap.

The issue before the Court is whether Applicant's H Amendment Application, a minor amendment to the previously approved master plan, constitutes a distinct permit application subject to an independent statutory cap under 10 V.S.A. § 6083a(a)(6). For the following reasons, we conclude it does not and that Applicant is entitled to the return of the portion of the H Amendment Application fee it ultimately paid that was above the statutory cap.

When interpreting a provision of a statute, our primary objective is to effectuate the intent of the Legislature. In re Grievance of Danforth, 174 Vt. 231, 238 (2002). In doing so, we adhere to familiar principles of statutory interpretation. In re Bove Demolition/Const. Application, 2015 VT 123, ¶ 8. We begin with the plain meaning of the statute, and if the plain language of the statute resolves the conflict without doing violence to the legislative scheme, we look no further. Appeal of Weeks, 167 Vt. 551, 554 (1998). If applying the plain language is impossible, would undermine the purpose of the statute, or would produce absurd results, then we examine "the broad subject matter of the statute, its effects and consequences, and the purpose and spirit of the law to determine legislative intent." In re Bove Demolition, 2015 VT 123, ¶ 8. If a statute is ambiguous, we must discern the intended meaning of the ambiguous term by reference to the "entire statute, including its subject matter, effects and consequences, and the reason and spirit of the law." Tarrant v. Dept. of Taxes, 169 Vt. 189, 197 (1999).

The plain language of the fee cap provision states, "In no event shall a permit application fee exceed $150,000." 10 V.S.A. § 6083a(a)(6) (2010). The statute does not define the term "permit application." Considering the legislative purpose of Section 6083a, we find it cannot mean that every individual application, regardless of complexity or size of the project, is a separate "permit application" subject to its own cap.

The purpose of Section 6083a is explicitly stated in the first paragraph of the statute, which provides in relevant part, "[A]pplicants shall be subject to the following fees for the purpose of compensating the State of Vermont for the direct and indirect costs incurred with respect to the administration of the Act 250 program." § 6083a(a). This purpose comports with the general requirement that regulatory fees be set to reasonably reflect the cost of administering the regulation. See Pollak v. City of Burlington, 158 Vt. 650, 651 (1992); Argast v. State Envtl. Bd., 143 Vt. 84, 86 (1983) (requiring evidence of the reasonable relationship

6

between charges assessed and services rendered by the commission). Therefore, the fee provisions of 10 V.S.A. §§ 6083a(a)1–6 should be interpreted to achieve a fee that roughly equates to the costs of reviewing the proposed project. As a result, to interpret the term "permit application" in 6083a(a)(6) to apply to any and all applications, regardless of size or complexity, would undermine the purpose of the statute. We therefore must interpret the applicability of the term "permit application" in harmony with purpose of the statute and in the context of the permitting process.

The specific context relevant here is that of master plan permits with subsequent minor amendments. A master plan enables an applicant proposing a large development to seek up-front review of the entire project, with subsequent expedited reviews of amendments to the master plan. See Act 250 Rule 21(F). An amendment to the master plan will be deemed a "minor amendment" and can bypass comprehensive review if the District Commission determines that it will not result in significant adverse impacts under any of the ten criteria of 10 V.S.A. § 6086a. Act 250 Rule 51(A). Such a review process, with substantial attention given to the master plan and expedited review to minor amendments, is designed to increase efficiency and reduce costs. See Act 250 Rule 21(G) ("These procedures are intended to minimize costs and inconvenience to applicants . . . ."). The efficiency and cost saving benefits of master plan review is reaffirmed by the Legislature's inclusion of a specific master plan fee provision in 10 V.S.A. 6083a(a)(5), which imposes an additional fee for "For projects involving the review of a master plan, a fee equivalent to $0.10 per $1,000.00 of total estimated construction costs in current dollars in addition to the fee established in subdivision 1 . . . for any portion of the project seeing construction approval." It would be inconsistent with the explicit purpose of 10 V.S.A. § 6083a if the extra fee provision for master plan approval did not result in cost and efficiency savings for subsequent permit applications related to the master plan.

With the understanding that the term "permit application" in 10 V.S.A. § 6083a(a)(6) cannot mean, as the Board suggests, that any application—minor permit amendments or initial Act 250 applications—are distinct "permit applications," we turn to the facts here to consider whether the fee Applicant was charged in excess of the statutory cap, was appropriate. We

conclude it was not. The H Amendment Application was treated as a minor amendment to the previously reviewed and approved master plan, and thus was subject to expedited review and approved without a hearing. The Board makes no offer as to the actual administrative costs of reviewing the master plan application or the H Amendment Application which is a minor amendment to the master plan. Rather, the Board argues that Section 6083a on its face requires a permit application fee for each permit application regardless of whether the permit is an amendment to a previously approved project or is the initial Act 250 permit. As previously discussed, this interpretation ignores the clear purpose of Section 6083a—to compensate the State for the costs incurred administering the Act 250 program. Therefore, based on the facts here, we conclude that Section 6083a(a)(6) limited the allowable fee for Applicant's H Amendment Application to the difference between the sum of its prior application fees for the Project and the then existing statutory cap of $150,000.

## Conclusion

Based on the foregoing, we find that Applicant's appeal is not moot and that Applicant was overcharged for its H Amendment Application. We therefore **GRANT** summary judgment to Applicant. Applicant is thus entitled to the return of the portion of the H Amendment Application fee it ultimately paid that was above the statutory cap of $150,000.00.

This completes the current proceedings before this Court. A judgment order accompanies this decision.

Electronically signed on January 27, 2016 at 12:43 PM pursuant to V.R.E.F. 7(d).

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division