STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 81-6-17 Vtec |

| | |
|---|---|
| Ledoux Zoning Permit | DECISION ON MOTION |

Albert R. Ledoux received a zoning permit to build a replacement home on a pre-existing lot.  William M. Bowman, III, challenges the permit, his principal argument being that the road used to access the lot is deficient.  Mr. Bowman now presents this argument in a motion for summary judgment.

Mr. Bowman is represented by Jon Anderson, Esq.  The Town of Fairfax (the Town), represented by Edward G. Adrian, Esq., filed an opposition to the motion.  Mr. Ledoux, permittee and would-be builder, is self-represented and has filed a memorandum adopting much of the Town's argument against the motion, with some additional details.[1]

## I.    Standard of Review

We grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  When considering a motion for summary judgment, we give the nonmoving party the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.  Once the moving party meets the initial burden of showing no material facts are disputed, the burden shifts to the non-moving party to establish a triable issue of fact.  Pierce v. Riggs, 149 Vt. 136, 138 (1987).  To establish that a fact is disputed or unsupported by the

---

[1] After the Town filed its opposition and Mr. Bowman filed a response, the Town filed a motion for leave to file a sur-reply, along with a sur-reply.  Mr. Bowman filed his opposition to this motion, along with a brief response. A party does not normally have a right to file a sur-reply to a motion.  V.R.C.P. 78(b)(1).  We may allow a sur-reply, however, when new issues are raised in the moving party's last filing.  Champlain Parkway Wetland CU Determination, No. 123-10-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Apr. 14, 2017) (Durkin, J.) (citations omitted).  That does not appear to be the case here; nevertheless, in the interest of developing our understanding of the parties' positions, we will consider all of the arguments presented.  The motion for leave to file a sur-reply is therefore **GRANTED**.

record, the non-moving party must cite to materials on the record or show that the materials cited by the moving party do not establish the absence of a genuine dispute.  V.R.C.P. 56(c).

## II. Factual Background

We recite the following facts based on the record now before us, and solely for the purpose of ruling on the pending motion.

1. Potter Road is located in Fairfax, Vermont.

2. Potter Road does not currently comply with the road and driveway standards stated in § 7.6 of the Fairfax Development Regulations as amended September 19, 2016 (the 2016 Regulations).

3. Potter Road has existed as a right-of-way since at least 1930, predating any zoning regulations.

4. Potter Road is not a Class I, II, III, or IV public road.

**17 Potter Road**

5. 17 Potter Road is owned by Mr. Ledoux and is only accessible via Potter Road.

6. The zoning regulations in effect in 1981 provided, in part:

> No land development may be permitted on lots which do not have either frontage on a (Class I, II, or III) public road, or on public waters, or, with the approval of the Planning Commission, access to such a road or waters by a permanent easement or right-of-way of record at least twenty-five (25) feet in width.

1981 Regulations Section 405.

7. A mobile home was constructed at 17 Potter Road in 1981.

8. The mobile home was unoccupied from at least October 2014 until it was demolished in the summer of 2017.

9. In 2017, Mr. Ledoux filed a zoning permit application for a "2 story colonial with attached 2-car garage [and] covered porch / back deck" at 17 Potter Road.  The application specifies that the house will be 28' tall, 25' wide, and 60' long, and will have three bedrooms and two and a half bathrooms.

10. The application is subject to the 2016 Regulations.[2]

---

[2] The Regulations went into effect 21 days after adoption.  Regulations § 1.2; 24 V.S.A. § 4442(c)(1).

11.    The Zoning Administrator approved the application, and Mr. Bowman appealed that decision to the Fairfax Development Review Board (DRB).  The DRB concluded that the zoning permit was properly issued, and Mr. Bowman subsequently appealed that decision to the Environmental Division.

12.    In the 2017 application review process, the DRB did not expressly approve access to the lot via Potter Road.

**46 Potter Road**

13.    Mr. Bowman owns and resides at 46 Potter Road which is accessible via Potter Road.

14.    In August 2012, Mr. Bowman received a zoning permit to build a single-household dwelling at 46 Potter Road.

15.    The Road Standards set out in the regulations at that time are identical to those currently in effect.

### III.    Discussion

Mr. Bowman moves for summary judgment on the theory that Potter Road fails to meet certain road standards and frontage requirements set out in the 2016 Regulations.  The Town and Mr. Ledoux counter that Potter Road and the lot at 17 Potter Road predate, and are therefore exempt from, these requirements.

We adhere to rules of statutory construction when reading zoning regulations, our objective being to implement the intent of the drafters.   In re Bove Demolition/Const. Application, 2015 VT 123, ¶ 8, 200 Vt. 452 (citations omitted).  We first rely on the plain language of the regulation, consider the regulations as a whole, and "try to give effect to every part."  In re Burlington Airport Permit, 2014 VT 72, ¶ 7, 197 Vt. 203 (quoting In re Curtis, 2006 VT 9, ¶ 2, 179 Vt. 620).  We generally construe zoning regulations "narrowly in favor of the property owner," and resolve ambiguity "in favor of the landowner."  In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 29, 199 Vt. 19.

2016 Regulations Article 9 define "land development" as:

The division of a parcel into two or more parcels; the construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any building or other structure; any mining or earth resource extraction; and any change in the use of any building or other structure, or land, or extension of use of land.

The home that Mr. Ledoux proposes to build is a land development under this definition.[3] 2016 Regulations § 2.3.C provides that:

No land development may be permitted on lots without either:

1. Frontage on:
   a) Class I, II III, or IV public road
   b) Town approved private road
   c) Public waters
2. Access by right-of-way approved by the DRB. Access by right-of-way requires DRB approval. DRB approval shall happen concurrently with any other DRB approvals required.  If no other DRB approvals are required, such approval shall require Site Plan Review.
   a) Access by right-of-way shall be at least thirty (30) feet in width to serve up to two lots, units or principal uses (a driveway) and at least fifty (50) feet to serve three or more lots, units or principal uses (a road).
   b) Access by right-of-way shall comply with the road and driveway standards (as applicable) in Section 7.6.
   c) The DRB shall consider the intended use of the property, safety, traffic, and road and site conditions in granting, conditioning, or denying approval.

The motion for summary judgment asserts that Potter Road does not fall into any of the categories set out in § 2.3.C.1, and that it also cannot be approved as a right-of-way under § 2.3.C.2.

**a.  Section 2.3.C.2: Whether Potter Road can be approved in this process**

The motion argues that the standards and requirements in §§ 2.3.C.2 and 7.6 (via § 2.3.C.2.b) apply to Mr. Ledoux's application, and that Potter Road fails to comply with these standards and requirements.[4]  The parties agree that Potter Road does not comply with some requirements in § 7.6; however, they disagree as to whether those requirements apply here.

Generally, when land development is proposed on a lot without frontage on either a public road or a town-approved private road, the DRB can approve access via a right-of-way pursuant to 2016 Regulations § 2.3.C.2.  The right-of-way must comply with standards set out in § 7.6. Id. § 2.3.C.2.b.  Where no other DRB approval is required, as is the case here, this right-of-

---

[3] Question 2 asks whether Mr. Ledoux proposes land development, as defined in the Regulations.  We answer this question in the affirmative.

[4] Question 5 asks whether the proposed access complies with design standards under §§ 2.3.C.2 and 7.6.

way access approval is done through site plan review.[5] Id. Site plan review requires compliance with the entirety of Article 7. Id. § 7.A ("**Applicability.** The Planning and Design Standards in this Article are intended for use by the DRB during the evaluation of applications for . . . Site Plan . . . approval.").

Article 7, however, does not apply to Mr. Ledoux's application for two reasons.

First, Article 7 states that "[t]hese Planning and Design Standards shall not apply to lots, or uses, having prior DRB approval, unless the proposed use is different than that which the DRB approved." 2016 Regulations § 7.A. Here, the lot at 17 Potter Road was created either by approval from the Town, or prior to the need for such approval.[6] A single-family residence was approved to be built on the lot, and was built in 1981. The use and the lot therefore have prior approval. The proposed use is a single-family residence, which is not different than the use that the DRB approved. Mr. Ledoux is seeking approval for a replacement home. Thus, the standards in Article 7 do not apply.

Second, compliance with Article 7 is not required when the proposed land development is for a single-household dwelling on a lot "created prior to the requirement for DRB approval [i.e. a pre-existing lot]," provided the "structure meets the Dimensional Standards in" § 2.3. Id. § 7.A.[7] If the creation of the lot at 17 Potter Road was not approved by the Town, then it was created prior to the requirement for DRB approval. The application therefore does not need to comply with the standards in Article 7.

For this reason, the summary judgment motion on this issue, and on Question 5, is **DENIED**.

---

[5] Mr. Bowman submits that 2016 Regulations § 2.3.C.2 specifies two separate approvals by the DRB: access approval requiring compliance only with § 7.6, and site plan approval. We disagree. Under this interpretation, access approval would involve review of compliance with only § 7.6; however, a separate site plan review would then involve compliance with all of Article 7, including § 7.6. We decline to interpret regulations in a way that leads to absurd results. See Bergeron v. Boyle, 2003 VT 89, ¶ 11 n. 1, 176 Vt. 78 (stating the courts will avoid interpretations that would lead to absurd results) (citation omitted).

[6] The record is unclear on this point.

[7] We note that while § 2.3 is titled "Dimensional Standards for Structures and Lots," § 7.A only calls for compliance with dimensional standards for structures, not for lots.

### b. Section 2.3.C.1: Whether Potter Road is a Town-approved private road.

The motion for summary judgment submits that Potter Road is neither a public road nor a town-approved private road.[8]

It is undisputed that Potter Road is not a Class I, II, III or IV public road. It is less clear, however, whether Potter Road is a town-approved private road under § 2.3.C.1.b.

The motion relies in part on the DRB decision below, which, according to Mr. Bowman's affidavit, "indicates that Potter Road is not a town-approved private road." Bill Bowman Aff. ¶ 7. Because we sit in the place of the DRB in this de novo proceeding, we do not consider the factual findings or legal conclusions of the DRB, including any conclusion the DRB may have drawn regarding whether Potter Road is a town-approved private road. S. Vt. Beagle Club, No. 142-9-11 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh, J.).

The 2016 Regulations do not define "Town approved private road," and nothing in the Regulations explicitly identifies the process for such approval. Article 7 of the 2016 Regulations is titled "Planning and Design Standards." Section 7.B.2 states that "[a]n engineering certificate is required to certify satisfactory completion of all private roads." While this could be a way for the Town to approve a private road, this is not explicitly stated. Even if this is one way to gain approval, it is unclear whether this would be the only way.

Construing the facts in favor of the nonmovant and the ambiguity within the Regulations in favor of the landowner, Potter Road could be considered a town-approved private road because the Town has approved construction on multiple lots that are only accessible by Potter Road.

In 1981, the Town approved construction of a mobile home on 17 Potter Road. At that time, land development was only allowed on lots on Class I, II, III public roads, waters, or private roads approved by the Planning Commission. The record indicates Potter Road was not a public road, and 17 Potter Road is not accessible by water. We can therefore assume for purposes of

---

[8] Mr. Bowman's Question 2 asks whether "the applicant's lot ha[s] frontage on a Class I, II, III or IV Public Road or a Town approved private road as required by" § 2.3.C.1? Mr. Bowman suggests in his response to Mr. Ledoux's sur-reply that whether Potter Road is a town-approved private road is not raised by the summary judgment motion. However, the motion does rely on the Court concluding that Potter Road is not a town-approved private road. For this reason, the motion, at page 3, states that "Potter Road is not a . . . town approved private road," citing to the statement of material facts, which cite in turn Mr. Bowman's affidavit.

6

ruling on this motion that the Planning Commission approved access via Potter Road at that time, either explicitly, or implicitly by granting a permit for construction of the mobile home.

In 2012, the Town issued a permit to Mr. Bowman to build a home at 46 Potter Road. Again, that lot is only accessible via Potter Road, and the regulations in effect at that time required town approval of the road in order to permit construction on a lot. It is unclear whether any explicit approval was given. Even if there was no explicit approval, however, we assume for purposes of ruling on this motion that issuing the building permit implicitly approved Potter Road as an acceptable way to access the lot.

Because it is possible that Potter Road is a town-approved private road by these prior permit approvals, Mr. Bowman's motion for summary judgment on this issue, and Question 2, is **DENIED**.

### c. Whether further approval of Potter Road is required

We take the implicit or explicit approval of Potter Road as an accessway for prior construction at 17 and 46 Potter Road as evidence either that Potter Road is a town-approved road; or that the Town has already approved Potter Road under § 2.3.C.2 for 17 Potter Road. In either case, no further approval of Potter Road is required for Mr. Ledoux's application to be approved. We are therefore inclined to conclude that Potter Road satisfies § 2.3, and grant judgment to Mr. Ledoux on this issue. Because there is no cross-motion requesting such judgment, we invite the parties to file briefs, if they wish to, on this issue pursuant to V.R.C.P. 56(f).

## IV. Remaining Questions

We answer Question 1, above, in the affirmative. Questions 2–5 focus on whether 17 Potter Road has appropriate access.[9]

Question 5 asks "Does the project comply with the" 2016 Regulations? This question is extremely broad.

A party appealing a decision to the Environmental Division must file a Statement of Questions to be determined on appeal. V.R.E.C.P. 5(f). The Statement of Questions "functions like a pleading to limit the issues that are to be heard on appeal." Id. Advisory Notes. The

---

[9] Question 4 asks whether the proposed access is a private road or driveway.

Statement of Questions also serves to put the parties, and the Court, on notice as to the issues to be litigated. <u>In re Unified Buddhist Church, Inc., Indirect Discharge Permit</u>, No. 253-10-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 11, 2007) (Wright, J.) (explaining that the Court and opposing parties "are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial"). If a Statement of Questions is vague or ambiguous, the Court can order the appellant to clarify its Questions. <u>In re Atwood Planned Unit Dev.</u>, 2017 VT 16, ¶¶ 13–14 (Mar. 17, 2017).

Question 5 is vague in that it fails to put the Court or the other parties on notice as to what issues—apart from the question of access addressed in this motion—are to be litigated. For this reason, we order Mr. Bowman to clarify this question by adding specificity.

### Order

For the forgoing reasons, Mr. Ledoux's motion to file a sur-reply is **GRANTED**, and Mr. Bowman's motion for summary judgment is **DENIED**.

Pursuant to V.R.C.P. Rule 56(f), parties may file briefs on our intended conclusion that Potter Road satisfies § 2.3 because it is either a town-approved private road, or because it has already been approved under § 2.3.C.2. Those briefs shall be filed no later than February 5, 2018.

Mr. Bowman is further **ORDERED** to clarify Question 5 with specificity no later than February 5, 2018.

Electronically signed on January 04, 2018 at 03:34 PM pursuant to V.R.E.F. 7(d).

_Tom Walsh_

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

8