STATE OF VERMONT

SUPERIOR COURT
ENVIRONMENTAL DIVISION
Docket No. 150-11-17 Vtec

| Burris Zoning Permit Denial | DECISION ON THE MERITS |
|---|---|

This on-the-record proceeding involves an application submitted by Nathanael Burris to construct a fence on his property located at 499 Beaver Creek Road in the Town of Shelburne, Vermont.  In an October 5, 2017 decision, the Town of Shelburne Development Review Board (DRB) upheld a decision by the Assistant Zoning Officer denying Mr. Burris' application.  Mr. Burris subsequently appealed this decision to the Environmental Division.

In reviewing the merits of this on-the-record appeal, the Court has considered the parties' briefs and the record, which consists of the DRB's decision, any exhibits considered by the DRB, and the transcript of the proceedings below, as set forth in Rule 5(h)(1)(A) of the Vermont Rules for Environmental Court Proceedings (V.R.E.C.P.).

Mr. Burris is self-represented.  The Town of Shelburne (Town) is represented by Edward Adrian, Esq.

**Standard of Review**

In an on-the-record appeal, we consider only the decision below, the record made before the municipal panel, including any exhibits relied upon, and the briefs submitted by the parties. V.R.E.C.P. 5(h); In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.).  We do not take any new evidence or complete our own determination of the facts.  Instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision."  See 24 V.S.A. § 1209(a)—(b).

We will uphold the municipal panel's findings of fact if they are supported by substantial evidence in the record.  See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568.  In doing this, the Court does not assess witness credibility or reweigh conflicting evidence in the record.  See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt.

248; In re Appeal of Leikert, No. 20040213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.). We determine whether the record contains information that a "reasonable person could accept . . . as adequate" support for those factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

If we determine the DRB's findings to be sufficient, the Court will review the DRB's legal conclusions de novo. Stowe Highlands, 2009 VT 76, ¶ 7. We do not defer to the DRB if such conclusions are outside the scope of its area of expertise. Id.

The Court's review is additionally limited to those issues raised by the Appellant in their Statement of Questions. See V.R.E.C.P. 5(f). With these legal standards in mind, we conduct our review of the DRB's decision, within the context of the legal issues preserved for our review by the Statement of Questions.

## Factual Background

Mr. Burris and his wife purchased the parcel located at 499 Beaver Creek Road in Shelburne in mid-2017. The parcel is improved by a single-family residence, which the Burris' reside in, and a shed. It is in the Beaver Creek neighborhood, which was approved by the Town in 1983 as a Planned Residential Development, now referred to as a Planned Unit Development-Residential (PUD-R) (hereinafter, the 1983 PUD approval).

Mr. Burris' parcel was created by the 1983 PUD approval. The approval includes a provision that "[m]inimum setback of homes along the perimeter of the property shall be 75' as per Section 1330.2 of the Shelburne Zoning Regulations. Buildings can be moved as long as Agricultural I District setbacks are met within the individual property boundaries." 1983 PUD approval at 2. Mr. Burris' property is located on the outermost boundary of the PUD-R.

Mr. Burris' parcel has been re-zoned to the Residential District, in which PUD-Rs may be permitted by the DRB, and the Bylaws have been amended from the time of the 1983 PUD approval to reflect a 50-foot setback for PUD-Rs in a Residential District. Bylaws §§ 440, 1930.3.A.3.

On June 16, 2011, the prior owners of Mr. Burris' property applied for and were granted a building permit to construct a shed within the perimeter buffer zone. Appellant Ex. 6. The

2

permit says that approval is based upon, among other things, the Bylaws. There is no discussion of the perimeter buffer zone within the permit.

On July 7, 2017, Mr. Burris submitted to the Town an "Accessory Structure Zoning Permit Application" to build a fence behind the residence on the northernmost area of the parcel within the 50-foot setback established by Bylaw § 1930.3.A.3. In an August 10, 2017 letter, the Town's Assistant Zoning Officer, Ms. Kaitlin Mitchell, denied the application. Mr. Burris then filed a timely appeal to the DRB. The DRB convened a properly noticed public hearing on September 20, 2017.

On October 5, 2017, the DRB issued a decision denying the permit application. The decision concluded that the fence was prohibited under both the 1983 PUD approval and the relevant Shelburne Zoning Bylaws (the Bylaws), including § 1930.3.A.3, § 1930.3.A.4, and § 1980.6.[1]

On November 3, 2017, Mr. Burris timely appealed the DRB's decision to this Court.

## Discussion

In interpreting zoning ordinances, we apply the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995). In interpreting an ordinance, "[w]e adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Lashins, 174 Vt. 467, 469 (2002) (mem.) (citation and quotation omitted).

When an ordinance is ambiguous, we will sustain an ordinance's interpretation by a body responsible of its execution "absent compelling indication of error." In re Duncan, 155 Vt. 402, 408 (1990) (citing Vermont Camping Ass'n v. Dep't of Emp't & Training, 145 Vt. 630, 633 (1985)). We will not, however, adopt an interpretation that has not been consistently applied. See In re Champlain Coll. Maple St. Dormitory, 2009 VT 55, ¶ 10, 186 Vt. 313 *overruled on other grounds* In re Confluence Behavioral Health, LLC, 2017 Vt. 112 (2017). Finally, because zoning regulations

---

[1] It is undisputed that the bylaws in effect as of May 3, 2017 are the controlling bylaws.

limit common law property rights, we resolve any uncertainty in favor of the property owner. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586.

Pursuant to the Bylaws:

No land development may be commenced within the area affected by these regulations without a zoning permit being issued by the administrative office. No zoning permit may be issued . . . except in conformation with these regulations, the provisions of the Vermont Planning and Development Act, and any conditions of approval applicable to the property subject to the application.

Bylaws § 2010.1. Land development is, in relevant part, "the construction . . . of any building or other structure." Id. at § 2110.84.

The terms "building" and "structure" are used interchangeably. Id. at § 2110.18. They are defined as "any construction, erection, assemblage or other combination of materials upon the land for occupancy or use, including . . . fences." Id.

A "setback" is, in relevant part, "[t]he distance from any property line or street right-of-way line to the nearest point of a building on the lot bounded by that property line or street line." Id. at § 2110.144.

The Bylaws define a "buffer" as "an area of land generally kept in a natural state, used to visually separate one use from another, to shield or block noise, lights, or other nuisances, or to protect a natural resource." Id. at § 2110.17. Alternatively, a "yard" is "[a]n open space on a lot, unoccupied and unobstructed by any building or structure, except as otherwise provided in these regulations." Id. at § 2110.173.

The Bylaws set forth specific standards for PUD-Rs, in which the parcel is located. In relevant part:

Minimum side and rear yard setbacks pertaining to the periphery of the PUD-R [is] 50 feet in all other Districts wherein PUD-Rs are permitted . . . . With the exception of structures existing on March 17, 2009, this perimeter buffer zone must be kept free of buildings, structures, parking areas, and roadways, except as needed for access to the parcel, and must be landscaped, screened or protected by natural features so that adverse effects on the surrounding areas are minimized.

Id. at § 1930.3.A.3.

Mr. Burris asserts that the buffer zone created by § 1930.3.A.3 is in fact a yard setback. He argues that the phrase "this perimeter buffer zone" refers to the "yard setbacks pertaining to

the periphery" set forth in the first sentence of § 1930.3.A.3. Therefore, the buffer zone is, in fact, a setback. Because of this, Mr. Burris asserts his fence may be built within the setback as proposed. See Bylaws § 1980.6.c ("Fences may be placed within yard setbacks provided that sight lines onto roads and drives remain unobstructed."). He further points out that "perimeter buffer zone" is not defined by the Bylaws and the Town did not create the buffer zone by including it in § 1930.3.A.3.

The Town disagrees, asserting that standards for those parcels located on the perimeter or periphery of the PUD-R are different from those on the interior of the PUD-R. Compare id. at § 1930.3.A.3 ("Minimum side and rear yard setbacks pertaining to the periphery"); with id. at § 1930.3.A.4 ("Yard requirements for lots within the PUD-R area not encompassed by the periphery buffer."). These interior yard requirements do not contain a buffer zone. Id. at § 1930.3.A.4. Further, the Town argues that Mr. Burris' interpretation of § 1930.3.A.3 would render the language prohibiting structures within the buffer zone as surplusage, resulting in an absurd or irrational result. See In re Bove Demolition/Const. Application, 2015 VT 123, ¶ 13, 200 Vt. 452 ("[W]e avoid construing language of an ordinance as mere surplusage."); Bergeron v. Boyle, 2003 VT 89, ¶ 11 n. 1, 176 Vt. 78 (stating that courts should avoid statutory construction that leads to absurd results). Finally, the Town asserts that § 1980.6.C applies to all yard setbacks generally, whereas § 1930.3.A.3 is specific to those setbacks that are also within the perimeter buffer zone. The Town contends that the general exception permitting fences in setbacks should not control the specific requirement that no structures may be constructed in the buffer zone.

Section 1930.3.A establishes specific standards for all PUD-Rs, in which the parcel is located. Section 1930.3.A.3 establishes specific standards for those "rear yard setbacks pertaining to the periphery of the PUD-R." The section continues to define this periphery setback, in relevant part, as a "perimeter buffer zone that must be kept free of . . . structures." Id. "Periphery" is not defined by the Bylaws nor is "perimeter buffer zone." However, when words are not defined by statute, we give them their plain and ordinary meaning, which may be obtained by dictionary definitions. See Franks v. Town of Essex, 2013 VT 84, ¶ 8, 194 Vt. 595.

"Periphery" generally means the outermost area or region within a precise boundary. See Webster's New College Dictionary 838 (3d ed. 2005). Based on this definition, the Court is

5

inclined to define "setbacks pertaining to periphery of the PUD-R" as meaning the specific setback requirements for the outermost boundaries of PUD-R.

With respect to "perimeter buffer zone," we note that buffer is defined by the Bylaws as set forth above. Bylaws § 2110.17. "Perimeter" generally means the outer limits of an area. Webster's at 838. "Zone" is defined as the "area, region, or division distinguished from adjacent parts by a distinctive feature of character." Id. at 1315. Read with the Bylaw definition of "buffer" and the description included in § 1930.3.A.3, we conclude the "perimeter buffer zone" is the area of land on the outer limits of a parcel which "must be kept free of . . . structures . . . and must be landscaped, screened or protected by natural features" in order to limit adverse impacts such as "noise, lights, or other nuisances, or to protect a natural resource." Id. at 838, 1315; Bylaws §§ 1930.3.A.3, 2110.17. When reading § 1930.3.A.3 in its entirety, the Court concludes that the "perimeter buffer zone" is a specific area created on peripheral PUD-R properties located on the outermost boundary of the PUD-R, where Mr. Burris' property is located.

While § 1930.3.A.3 utilizes the defined term "yard setback," we cannot agree with Mr. Burris that the use of this term permits the construction of a fence within the perimeter buffer zone pursuant to § 1980.6.C. "Where there are two provisions of an ordinance, one specific and one general, that address the same subject, the specific must prevail." DD Properties, LLC, No. 111-8-13 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Jun. 23, 2016) (Durkin, J.) (citing In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 31, 199 Vt. 19). Here, the general standard is that structures are not permitted in setbacks. See Bylaws § 2010.7 ("All uses not specifically authorized by this bylaw are prohibited."); Id. at § 2110.144 (defining setback and not specifically authorizing the construction of structures within the setback). Fences are then specifically permitted to be constructed in setbacks pursuant to § 1980.6.C.[2] The Bylaws then provide further specificity for parcels located in the periphery of a PUD-R. Id. at § 1930.3.A.3. All structures, excluding those necessary to provide access to the parcel, are specifically prohibited from being built within the "perimeter buffer zone" of PUD-Rs, as defined above. Id. Fences are,

---

[2] We note that Mr. Burris appears to argue that, of the 8 subsections of § 1980.6 only the exception of fencing would apply to the perimeter buffer zone. See Bylaws § 1980.6. Six of these exceptions permit the construction of structures. Id. He has stated that the prohibition of all other structures would remain in place other than fences. App. Repl. Brief p. 3. It is unclear how he reaches this conclusion. We note that some of these exceptions could potentially be defined as those "need for access to the parcel," however. Id at § 1930.3.A.3.

therefore, specifically unauthorized within the perimeter buffer zone. This specific provision must control the more general exception of § 1980.6.C permitting fences within setbacks.

The Court concludes that, based on the plain language of the Bylaw, fences are unauthorized structures within the perimeter buffer zone established by § 1930.3.A.3. We will not, however, adopt an interpretation that has not been consistently applied. See Champlain Coll., 2009 VT 55, ¶ 10, 186 Vt. 313. Further, zoning laws are to be strictly construed in favor of property owners. Bjerke, 2014 VT 13, ¶ 22.

On June 16, 2011, the prior owners of Mr. Burris' property applied for and were granted a building permit to construct a shed within the perimeter buffer zone. Appellant Ex. 6. The permit does say that approval is based upon, among other things, the Bylaws. Id. There is no discussion of the perimeter buffer zone within the permit, whether the Town considered the perimeter buffer zone, or why the shed was allowed within the perimeter buffer zone. Id. The Town has provided no explanation or argument in this matter as to why a shed could be constructed in the perimeter buffer zone in 2011 but a fence is prohibited in 2017.[3]

Mr. Burris also points to fences within the Beaver Creek neighborhood allegedly located within the perimeter buffer zone. See Appellant Ex. 5B-5J. The permitting status of these fences and their dates of construction are not in the record. Mr. Burris argues that he offered such evidence at the DRB public hearing. This evidence, however, was excluded on relevancy grounds.

Municipalities electing to conduct land use determinations subject to on-the-record review follows the procedural requirements of the Municipal Administrative Procedure Act (MAPA). See 24 V.S.A. § 4471(b); In re Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec, slip op. at 6-7 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2012) (Walsh, J.). MAPA requires the rules of evidence to be followed by such municipalities. 24 V.S.A. § 1206(b).

Relevant evidence is generally admissible. V.R.E. Rule 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. Rule 401.

---

[3] Even if this permit was issued in error, it has become final and binding upon all parties pursuant to Title 10 V.S.A. § 8504(b)(1).

Evidence regarding the permitting status of other fences in the Beaver Creek neighborhood allegedly built within the perimeter buffer zone is directly relevant to whether or not the Town's interpretation of prohibiting structures within the perimeter buffer zone has been consistently applied. Therefore, the DRB erred in declining to admit this evidence.

While the plain language of the Bylaw prohibits structures within the perimeter buffer zone, we cannot conclude whether to adopt this interpretation on the record before us. For instance, if the Town has a consistent practice of approving structures, including fences, within the perimeter buffer zone, this would greatly influence this Court's interpretation of the Bylaw and the present application. We therefore must remand the matter back to the DRB to reopen the evidence with regard to existing structures, including fences, and to make additional findings of fact regarding the permitting status of these structures. Because of this conclusion, it is unnecessary to address additional arguments raised by the Appellant.

## Conclusion

For the foregoing reasons, we **REMAND** this matter back to the DRB to reopen the evidence with regard to existing structures, to make additional factual findings, and potentially reconsider prior conclusions of law, all consistent with this decision.

A judgment order is issued concurrently with this decision. This concludes this matter.

Electronically signed on July 09, 2018 at 03:01 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division